609 A.2d 672 (1992)
William B. WOLF, Sr., et al., Appellants,
v.
DISTRICT OF COLUMBIA, Appellee.
No. 90-TX-1011.
District of Columbia Court of Appeals.
Argued April 6, 1992.
Decided April 17, 1992.[*]
*673 M. Paul Zimmerman, for appellants.
Edward E. Schwab, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Martin B. White, Asst. Corp. Counsel, were on the brief, for appellee.
Before FERREN and STEADMAN, Associate Judges, and GALLAGHER, Senior Judge.
FERREN, Associate Judge:
Appellants raise numerous challenges to the District's 1987 real property tax assessment for the commercial property located at 1121 Vermont Avenue, N.W., and claim the trial court erred in upholding that assessment. After reviewing each of appellants' claims and finding no error, we affirm.

I.
Appellants are the lessees of land owned by the John Hancock Mutual Life Insurance Company. Under the terms of the lease, appellants, who own the office building on the land (the improvement), pay all real estate taxes. For tax year 1987, the District assessed the real property (land plus improvement) at $17,788,000, allocating $8,030,500 to the land and $9,757,500 to the improvement. The assessment was sustained by the Board of Equalization and Review. For both 1985 and 1986, the District had assessed the property at $12,510,000 ($5,300,130 for land, $7,209,870 for improvement). Appellants paid their 1987 taxes and then sued for a refund in Superior Court.
*674 In their petition, appellants challenged the valuation of the land but not the valuation of the improvement or the overall real property assessment. Accordingly, appellants moved to prohibit the District from introducing evidence concerning the value of the improvement and the combined value of the land and the improvement. The trial court denied the motion. We now summarize the findings of the court based on the evidence at trial.
The overall assessment was a two-step process. First, the assessor determined the total value of the real property (land plus improvement) using the income capitalization approach.[1] This approach resulted in a total value of $17,790,869. The assessor then used the comparable sales method in effect to check the income capitalization figure. Those comparable sales are listed in District exhibit J. The resulting total assessed value was $17,788,000.
Second, the assessor used the building residual method to allocate the total value between the land and the improvement. Under this method, the land value is determined and then subtracted from the total assessed value in order to get the value of the improvement. To obtain the value of the land, the assessor used a standard mathematical formula based on the specific site location, lot type (corner), and square footage of the assessed property. After computing that formula, the assessor arrived at a price per point of floor area ratio (FAR) of $50.
The assessor then multiplied the $50 price by the applicable FAR (10) to get a price per square foot of land area of $500. This figure was within the range indicated by a second set of comparable sales used by the assessor. These comparable are listed in District exhibit K. The assessor then multiplied the $500 figure by the square footage of the property to assess the land at $8,030,500. Subtracting that figure from the overall assessment ($17,788,000), he then allocated the remaining $9,757,500 value to the improvement.

II.
As a threshold matter, we note that appellants' petition in Superior Court alleged that the District's assessment of the land  not the District's overall assessment  was in error. All of appellants' claims on appeal also focus only on the District's assessment of the land. Furthermore, appellants request that we reverse the trial court's order upholding the District's assessment of the land and remand for an assessment of the land at either appellants' own figure ($6,183,484) or at the District's assessment for tax year 1986 ($5,300,130).
After the parties filed their briefs, this court decided Washington Post Co. v. District of Columbia, 596 A.2d 517 (D.C.1991), in which we held that if the real property is fairly assessed in its entirety, then any misallocation of value between the land and the improvement provides no basis for a refund or damages. Id. at 519. In construing relevant D.C.Code provisions, we reasoned that "[t]hese provisions establish, in our view, that a taxpayer is entitled to a refund when the assessment of the `real property'  the combination of land and improvements  is excessive, not when the allocation of value between land and improvements is erroneous." Id. at 520. Because appellants do not challenge the District's overall assessment, even if the assessor did make a mistake in allocating the total value between land and improvement, such an error (generally) provides no basis for relief, i.e., a refund. See id. at 520-21.
Appellants, however, raise a valid argument that Washington Post should not be read to bar all challenges of the District's allocation between land and improvement. They argue, for example, that the rent they pay to the District for sub-surface space ("vault rental") is based "on the assessed value per square foot of the abutting land," and that therefore they have been *675 injured because of a misallocation of value between the land and improvement. In this case, however, appellants did not petition the trial court to remedy harm incurred because they paid too much in vault rental on account of the District's land assessment. We also note that there may be properties in the city where Party A pays the taxes assessed to the land portion while Party B pays the taxes allocated to the improvement portion. In such a situation, a misallocation might provide the basis for a claim for damages or an action against the District to correct a mistake. Again, that is not the case before us.

III.
Because appellants' counsel asserted during oral argument that a gross overvaluation of the land should have been considered in checking the overall valuation, we briefly address appellants' remaining claims on appeal.[2] First, they argue that the District violated D.C.Code § 47-821(a) (1990) because the "assessor merely used a predetermined mathematical formula and his calculator." This argument is without merit. Section 47-821(a) provides, in relevant part, that "[t]he Mayor shall assess all real property, identifying separately the value of land and improvements thereon." That is what the assessor did in this case. The fact that he did so by formula  taking into account the property's site and corner location and its square footage  is of no consequence, unless appellants can prove either that the basis of the formula is unlawful or that the assessor's computation of the formula in this case was inaccurate. See Wolf II, supra note 1, 611 A.2d at 45 (taxpayer has burden of proving that assessment methodology and valuations are erroneous); Safeway Stores, Inc. v. District of Columbia, 525 A.2d 207, 211 (D.C.1987) (taxpayer has burden of proving that assessment is incorrect or illegal). Although appellants claim the District did not assess their "particular" parcel of land and used "arbitrary" figures in its calculation, they adduced no evidence at trial to support those claims.[3]
Appellants next contend that the trial court erred in finding comparable the sales of land the assessor used in step two of his assessment process. They argue that such sales were not "reasonably comparable" within the meaning of 9 DCMR § 307.3 (1986), because the assessor did not take into consideration the terms of each sale or the encumbrances (such as leases) on each parcel. We rejected a similar argument in Wolf v. District of Columbia, 597 A.2d 1303, 1311 (D.C.1991) (Wolf I) (District entitled to presume sales prices of selected comparable buildings reasonably reflect spectrum of market forces and encumbrances). See also Wolf II, supra note 1, 611 A.2d at 45. Furthermore, the trial court found that the comparable sales used by the assessor (listed in District exhibit K) appeared to support the $50 per point of FAR the assessor obtained by using the mathematical formula. Appellants produced no evidence showing that the "usual criteria [of comparability such] as location, age, and configuration," Wolf I, 597 A.2d at 1311, of the properties selected by the assessor for comparison were not "reasonably comparable."[4]
*676 Finally, appellants argue that the District's assessment of the land was inaccurate or unlawful because it failed to take account of a ground lease and a purchase option  "encumbrances" benefiting appellants as owners of the building and holders of the below market price lease and option  which depress the property's "market value." In light of our disposition of the case on grounds stated in Washington Post, we decline the opportunity presented by the parties to sort through the meaning and theoretical underpinnings of "market value" in the context of the purposes and policies of real property tax assessment. We note in passing that, although D.C.Code § 47-820(a) provides that the assessor take into account "any factor which might have a bearing upon the market value of the real property," the trial court found, and appellants presented, no evidence of the magnitude of the ground lease's possible impact. If a factor is not shown to "have a bearing upon the market value," then the assessor commits no misdeed in failing to consider it. See also Safeway Stores, 525 A.2d at 211-12 (sustaining trial court's approval of assessor's decision not to consider "sweetheart" lease back arrangements).[5]
For the foregoing reasons, the decision on appeal is
Affirmed.
NOTES
[*] This decision was originally released as a Memorandum Opinion and Judgment on April 17, 1992. It is now being published pursuant to appellee's motion, with minor revisions.
[1] For a fuller description and discussion of this approach, see Wolf v. District of Columbia, 611 A.2d 44, 47-49 (1992) (Wolf II).
[2] Preliminarily, we reject appellants' argument that the trial court erred in approving a land assessment that was a little more than fifty percent higher than the preceding year's. As appellants themselves recognize, the size of the increase could simply reflect a previous under-assessment. Contrary to appellants' bold assertion, there is no evidence that the District is now "penalizing" them for a previous year's under-assessment by "jacking-up" the 1987 assessment.

Similarly, appellants' contention that the trial court erred in denying their motion to prohibit admission of evidence of the overall assessment is misguided. As we noted above, the assessment consisted of two steps, each integrally linked to the other. Furthermore, as we observed in Washington Post, the trial court (in almost all cases) reviews the overall assessment for accuracy and lawfulness.
[3] The assessor, Mr. Davis, testified that he made an individualized determination but had concluded that the property did not possess any unique characteristics to warrant deviation from the standard adjustment figures he used.
[4] The trial court found that the location and zoning characteristics and the allowable FAR of the properties compared were the same as appellants' property, and that the dates of the comparable sales were close to the valuation date of the subject property. Appellants do not challenge these findings, and we can find no clear error. See Washington Post Co., 596 A.2d at 522-23.
[5] We also find no merit in appellants' argument that the trial court erred in not relying on Mr. Wolf's testimony that the District's valuation would produce a return on equity of only 4.357 percent, and that, therefore, the District's valuation was unreasonable. As the trial court found, Mr. Wolf's calculation only took into consideration a single year and failed to include the present worth of possible future income streams. Because the trial court had sound reasons for not relying on appellants' figures and calculations, we discern no clear error.