**DISTRICT OF COLUMBIA, Appellant**

**v.**

**Paul F. BEATLEY, et al., Appellees.**

**No. 93–TX–1030.**

District of Columbia Court of Appeals.

Submitted Sept. 7, 1995.

Decided Sept. 28, 1995.

Vanessa Ruiz, Acting Corporation Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corporation Counsel, and Lutz Alexander Prager, Assistant Deputy Corporation Counsel, for appellant.

Blaine P. Friedlander, Washington, DC, for appellees.

Before TERRY, FARRELL, and KING, Associate Judges.

KING, Associate Judge:

In this appeal, the District of Columbia ("District") challenges the trial court's reduction in the assessed value of appellees' ("the Beatleys") real property for tax year 1992. The Beatleys appear to concede that the property should have been assessed for commercial use, and therefore, agree that the trial court's order should be reversed; however, they contend that the District's assessor failed to properly follow guidelines in assessing the property and, therefore, the amount of the assessment should be lower than the amount found by the trial court.[1]

For the reasons set forth below, we hold that the property was incorrectly assessed and reclassified by the trial court, and therefore, the trial court's order reducing the assessed value of the real property must be reversed.

## I.

The assessed property is composed of three contiguous lots on Pennsylvania Avenue, S.E. in the District: Lot 809 contains a three-level town house; Lot 805 contains an uninhabitable garage of negligible value; and Lot 806 is vacant. The property had been assessed by the District as follows: Lot 809 was classified as mixed use, part owner-occupied residential property (class 1) and part commercial and industrial property (class 4); Lot 805 was classified as non-transient residential property (class 2); and Lot 806 was classified as vacant property (class 5). *See* D.C.Code § 47–813 (1995 Supp.). The house on Lot 809 was valued at $157,120 as of January 1, 1991 for tax year 1992, and at $109,120 as of January 1, 1990 for tax year 1991; in all other respects the values of the three lots were identical for the 1991 and 1992 tax years.

The Beatleys challenged both the valuation and the classification of their property in Superior Court, contending that each lot should have been classified as owner-occupied residential property (class 1). At trial, one of the owners testified that Lot 809 was used by a commercial tenant between December 1990 and May or June of 1991. External inspection by the assessor disclosed that the property was being used commercially in part as of December 31, 1990.[2] The assessor treated Lot 809 as mixed commercial-residential use in her assessment because she assumed that the basement was being used as a residence. As mixed-use property, the assessor increased the valuation for tax year 1992 because of the increased commercial values in the neighborhood. The court also noted, upon questioning one owner, "as I understand your testimony the use as of January 1, 1991 was for commercial purposes," to which the owner responded: "That's correct."

The Beatleys had applied for a commercial certificate of occupancy in April 1991, which was several months into the commercial lease on the premises, and after the January 1, 1991 valuation date. For reasons not disclosed in the record, the District denied the certificate, pending property improvements which the owner testified would have required a $7,000 expenditure.

In its Order, the trial court recognized that the Beatleys' property "was, apparently, being used on th[e valuation] date for both residential and commercial purposes at that time, and the applicable zoning would have permitted the owner of the property to obtain authorization for commercial use of the property." However, because the Beatleys' property did not have a certificate of occupancy for commercial purposes on the valuation date for tax year 1992, the trial court found that the District "erroneously assessed the property as commercial property, for the property could not legally be used for that purpose at the time involved in this case." Consequently, the trial court voided the assessment based on commercial use of the property, classified all three lots as residen-

---

1. Although it is not clear from the record on appeal that the Beatleys made this argument to the trial court, it is clear that the trial court made no ruling on that point. Accordingly, if the trial record reveals that the issue was presented to the trial court, it may be considered on remand.

2. While assessors attempt to verify a claim that commercially-zoned property is not being used commercially by an internal inspection, in the present case, the assessor was unable to obtain entry to the building on Lot 809.

tial, and assessed the values for each as identical to their 1991 tax year assessed values, resulting in a refund of $3,640.51, plus interest. This appeal followed.

## II.

The District contends that "[t]he trial court['s] holding that the assessor could not base her assessment on the commercial zoning and actual commercial use of the building lot on the valuation day for tax year 1992, January 1, 1991, because the owners had not obtained a certificate of occupancy for commercial use is ... error, warranting ... reversal." We agree.

To determine estimated market value, the Mayor may "take into account any factor which might have a bearing on the market value of the real property including, but not limited to, sales information on similar types of real property ... zoning, and government imposed restrictions." D.C.Code § 47–820(a). Among the factors assessors may use to value property are the "highest and best use to which the property can be put ... and the present use and condition of the property." 9 DCMR § 307.1 (1986); D.C.Code § 47–802(4). For commercially-zoned property, the "highest and best use" is typically commercial use.

The assessed value of all real property is to be identical to its "estimated market value" on January 1 of the year preceding the tax year. D.C.Code § 47–820(a). For tax year 1992, the valuation date was January 1, 1991. The law defines "estimated market value" as:

> 100 per centum of the most probable price at which a particular piece of real property, if exposed for sale on the open market with a reasonable time for the seller to find a purchaser, would be expected to transfer under prevailing market conditions between parties who have knowledge of the uses to which the property *may* be put, both seeking to maximize their gains and either being in a position to take advantage of the exigencies of the other.

D.C.Code § 47–802(4) (emphasis added).

As of January 1, 1991, the Beatleys' property was zoned for commercial use and was actually being used for commercial purposes. The fact that the Beatleys did not have a commercial certificate of occupancy is not controlling. *See* D.C.Code §§ 47–820(a), –802(4) (statute specifies that assessed value should be "most probable price" a buyer would be willing to pay for the property if aware of "the uses to which the property may be put"; no requirement that the property must be ready for present occupation under its highest and best use). The "highest and best use" to which the property could be put, and indeed was being put, was commercial use. Moreover, the $7,000 in improvements it would have taken to prepare the property for a commercial certificate of occupancy is only 4.5% of the 1992 assessed value and 6.4% of the 1991 assessed value; this is a relatively small investment a willing buyer could make to permit the property to be used for its highest and best use. D.C.Code § 47–802(4). While the Beatleys' lack of an occupancy permit reflecting their actual commercial use of the property might have subjected them to penalties, it had no bearing on the assessment of their property for tax purposes.

In short, the assessor properly considered both the uses to which the Beatley property could lawfully be put by a willing buyer and the use to which the property was being put by its owners on the January 1, 1991 valuation date in accordance with D.C. tax law and regulations. Consequently, because the assessment was neither incorrect nor illegal, it must be accepted even if an alternative method might have yielded a different result. *Safeway Stores, Inc. v. District of Columbia*, 525 A.2d 207, 211 (D.C.1987). Accordingly, the trial court judgment is hereby

*Reversed.*