DISTRICT OF COLUMBIA, Appellant,

v.

ROSE ASSOCIATES, Appellee.

Nos. 96–TX–40 and 96–TX–502.

District of Columbia Court of Appeals.

Argued June 5, 1997.

Decided July 24, 1997.

Martin B. White, Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel at the time the brief was filed, Jo Anne Robinson, Interim Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Lutz Alexander Prager, Deputy Assistant Corporation Counsel, were on the brief, for appellant.

Gilbert Hahn, Jr., with whom Tanja H. Castro, Washington, DC, was on the brief, for appellee.

Before STEADMAN and KING, Associate Judges, and GALLAGHER, Senior Judge.

KING, Associate Judge:

These cases involve a dispute between the District of Columbia Department of Finance and Revenue ("DFR") and Rose Associates, the owners of an office building located at 1625 K Street, N.W., over the proper valuation and real estate tax assessments for that property for tax years 1992 and 1993. The trial court ruled in favor of Rose Associates, rejecting the DFR assessments and adopting the appraisals of Rose Associates' expert witness as the correct estimated market values of the property. Because the trial court erred in its interpretation of certain language in our opinion in *Rock Creek Plaza–Woodner Ltd. Partnership v. District of Columbia,* 466 A.2d 857 (D.C.1983), and because its reading of that language played a substantial role in both the trial court's rejection of much of the District's position and its acceptance of the testimony of the taxpayer's expert, we must reverse and remand the cases for further proceedings.

Rose Associates brought these actions in the Superior Court alleging that the assessments at issue were incorrect and flawed because the DFR assessor erred in his application of the capitalization of income method of valuing commercial real estate.[1] In partic-

---

1. This method is variously referred to as: "capitalization of income approach/method," "income capitalization approach/method," "income approach/method," "income capitalization analysis," "income or economic approach," or "capi-

ular, Rose Associates claimed that the DFR assessor used flawed capitalization rates in calculating the fair market values of the property, and improperly failed to use the actual income of the property in developing estimates of the building's net operating income. To that end, Rose Associates presented the testimony and reports of an expert commercial real estate appraiser. In some of her criticisms of the DFR valuations and assessments, and in developing her own appraisals of the estimated market values of the property, the expert relied in no small part on language in *Rock Creek Plaza, supra,* 466 A.2d at 858, which describes the capitalization rate as "a number representing the percentage rate that taxpayers must recover annually to pay the mortgage, to obtain a fair return on taxpayers' equity in the property, and to pay real estate taxes." *Id.* The trial court and the expert treated this language as the binding and all-encompassing definition of the term "capitalization rate." Moreover, both also interpreted the words "fair return on taxpayers' equity" to require that the capitalization rate selected not result in projected negative cash flows for the property, a position contrary to that relied upon, at least in part, by DFR. Based on the expert's evidence and its understanding of the *Rock Creek Plaza* "definition" of capitalization rate, the trial court concluded that Rose Associates had met its burden of proving that the DFR assessments were flawed and incorrect, and therefore rejected the assessments. In addition, the trial court ruled that Rose Associates' expert had convincingly calculated the estimated market values of the property and adopted those valuations as correct and reliable.

We hold that the trial court misread the *Rock Creek Plaza* language as establishing a binding and all-encompassing definition of "capitalization rate." To be sure, the language in *Rock Creek Plaza* describes, in general terms, what a capitalization rate is, and it is understandable that the trial judge here[2] relied upon that formulation as definitive and binding, because we repeated that exact language in several of our later cases. *See District of Columbia v. Washington Sheraton Corp.,* 499 A.2d 109, 114 (D.C.1985); *Wolf (I) v. District of Columbia,* 597 A.2d 1303, 1309 (D.C.1991); *Wolf (III) v. District of Columbia,* 611 A.2d 44, 47 (D.C.1992). That reliance is misplaced, however, because the issue presented and resolved in *Rock Creek Plaza, supra,* as we show below, was not related to the manner in which capitalization rates are to be defined or determined. Thus the language relied upon is nothing more than oft-repeated dictum, not a binding precedent. *See District of Columbia v. Sierra Club,* 670 A.2d 354, 360 (D.C.1996) ("the rule of stare decisis is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question") (quoting *Fletcher v. Scott,* 201 Minn. 609, 277 N.W. 270, 272 (1938)).

We begin our analysis by noting that in *Rock Creek Plaza* the issue was whether the trial court had arbitrarily rejected the taxpayer's expert evidence regarding the correct assessment of the taxpayer's property. The expert's evidence was found wanting because the expert had not taken into account an FHA mortgage on the property, and because the expert deducted the costs of yet-to-be-completed renovations from the property's estimated value when renovated in order to arrive at the value of the partially renovated property. *Rock Creek Plaza, supra,* 466 A.2d at 860–62. We held that the

talization of net income approach." The terms are used interchangeably here.

This method of valuation can be summarized by the formula $V = I/R$, where V is the present value of the property, I is the annual income generated by the property, and R is the capitalization rate. R represents a percentage ratio between the annual income expected to be generated by a building and the price a ready, willing and informed buyer would be willing to pay for it in given year.

In their briefs, the parties also discussed other generally accepted approaches to valuing real estate; however, the choice of valuation method is not at issue in this case because both parties relied primarily on the capitalization of income approach and neither has contended that such reliance was inappropriate.

2. In its brief, the taxpayer represented that at least eighteen other decisions issued by the Tax Division of the Superior Court have interpreted this language in *Rock Creek Plaza* in the same way as the trial court here.

trial court erred in rejecting the expert testimony because there was an insufficient evidentiary basis for the trial court to credit the FHA valuation and because it had misconstrued the nature of the renovations deduction; thus there was no record basis to support the trial court's conclusion that the taxpayer's expert was unworthy of belief. We remanded the case to the trial court for proper evaluation of the evidence. *Id.* In the course of explaining the background of the dispute, we noted that the parties in that case agreed that the capitalization of income method of valuation was the most appropriate for evaluating the fair market value of the property at issue. *Id.* at 858. We then gave a general description of that approach:

> This method entails deriving a "stabilized annual net income" by reference to the income and expenses of the property over a period of several years. That annual net income is then divided by a capitalization rate—a number representing the percentage rate that taxpayers must recover annually to pay the mortgage, to obtain fair return on taxpayers' equity in the property, and to pay real estate taxes.

*Id.* It is the latter sentence that the trial court here treated as definitive for determining a capitalization rate.

The disputed language from *Rock Creek Plaza* is nothing more and nothing less than a handy, but imprecise, description of a technical term. The language says nothing about the methods by which one may determine an appropriate capitalization rate, gives no guidance whatsoever as to what might be "a fair return" on equity, and does not instruct or imply that comparable properties producing a negative cash flow should be disregarded in calculating a capitalization rate. Furthermore, there is nothing in the purported *Rock Creek Plaza* definition that conflicts with or restricts the statutory list of the many, non-exclusive, factors that may be considered by assessors in determining the fair market value of a particular property. The statute provides that

> [t]he assessed value for all real property shall be the estimated market value of such property.... In determining the es-

timated market value ... the Mayor shall take into account any factor which might have a bearing on the market value of the real property including, but not limited to, sales information on similar types of real property, mortgage, or other financial considerations, reproduction cost less accrued depreciation because of age, condition, and other factors, income-earning potential (if any), zoning, and government-imposed restrictions. Assessments shall be based upon the sources of information available to the Mayor which may include actual view.

D.C.Code § 47–820(a) (1997 Repl.). In short, the *Rock Creek Plaza* "definition" was just a simple description of one variable in the particular valuation method used by the parties in that case to arrive at their estimates of fair market value in compliance with this statutory provision.

 We have never addressed the question of acceptable capitalization rate methodology, and we will not take that step in these cases. Any attempt to do so, however, should be carefully constructed to avoid undue restrictions on otherwise generally accepted methods of valuation in contravention of the broad statutory directive that the Mayor shall take into account "any factor which might have a bearing on the market value." *See* D.C.Code § 47–820(a). Our case law recognizes, and the parties agree, that there are various ways for determining an accurate estimate of fair market value, and that income capitalization is one of the generally accepted methods. *See Wolf (III), supra,* 611 A.2d at 47. The capitalization rate is one variable within the income capitalization equation,[3] and, as the parties have ably demonstrated in their briefs, there are a variety of methods, taking into account numerous factors, for determining an appropriate rate. In short, the determination of an appropriate capitalization rate for a particular year for a particular property is a fact-specific determination not susceptible to a singular definition. So long as DFR bases its determination on a generally accepted method, its position on the appropriateness

---

**3.** See note 1.

of a selected capitalization rate should be given due consideration by the trial court.

■ Because the trial court did not afford that due consideration to DFR's evidence supporting its choice of capitalization rates, we remand these cases to the trial court for further proceedings in light of this opinion.

*Reversed and remanded for further proceedings.*