YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF the NATIONAL CAPITAL AREA, INC., Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 97–TX–285.

District of Columbia Court of Appeals.

Argued May 18, 1999.

Decided July 8, 1999.

---

Bardyl R. Tirana, for appellant.

Edward Schwab, Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before STEADMAN, FARRELL, and REID, Associate Judges.

FARRELL, Associate Judge:

■ These consolidated appeals are from an order of the Superior Court sustaining tax assessments against the property in question for the tax years 1992, 1993, and 1994. The trial judge, sitting as trier of fact, ruled for the government at

the close of the appellant-taxpayer's case because appellant (hereafter "YWCA") had not met its burden of proving anything "erroneous, arbitrary, [or] unlawful" in the assessments, quoting *District of Columbia v. Burlington Apartment House Co.*, 375 A.2d 1052, 1057 (D.C.1977).[1] In particular, although it presented testimony of a large discrepancy between its own appraiser's estimate of the market value of the property for the years in question and the District's assessment, YWCA had not shown—or even attempted to show—a defect in the methodology underlying the District's valuation. An assessment, the trial judge wrote,

> is the result solely of the assessor's methodology used in achieving that assessment. Thus, it logically follows that in order to show how or why an assessment is incorrect, the [taxpayer] must show that the methodology used in calculating the assessment was incorrect.... [I]n order to attack the methodology, the [taxpayer] must introduce evidence of that methodology.

By "merely introducing evidence of what [YWCA's] expert did to calculate *his* appraisal," YWCA "ha[d] only speculated as to incorrectness in the methodology used to calculate the assessment." (Emphasis added).

■ The trial court's analysis is consistent with our decisions, and we sustain it. Although YWCA concedes that it had the burden of proving error in the assessment, *see* Super. Ct. Tax R. 12(b), it argues that it proved a *prima facie* case of error by demonstrating a gross disparity between YWCA's appraisal and the District's—at which point it became the District's burden to explain and justify the assessments. Our cases do not support this position. In *Safeway Stores, Inc. v.*

---

1. The trial judge dismissed YWCA's consolidated suits under Super. Ct. Civ. R. 41(b). Although, as YWCA points out, the Superior Court Tax Rules make no explicit provision for applying Rule 41(b) to cases heard in that division, *see* Super. Ct. Tax R. 3(a) (omitting Civil Rules 41, 50, and 52 from list of rules applicable to Tax Division), we agree with the trial judge that this omission was not meant to leave the court powerless to end a suit when the taxpayer's own proof (or lack of it) demonstrates that it cannot prevail under the substantive law. *See Fireison v. Pearson*, 520 A.2d 1046, 1049 & n. 3 (D.C.1987).

*District of Columbia,* 525 A.2d 207 (D.C. 1987), for example, we stated that the taxpayer's burden in a case challenging a real property tax assessment is to show that the assessment is "incorrect or illegal, not merely that alternative methods exist giving a different result." *Id.* at 211. Thus, the fact that the taxpayer's appraiser, using an alternative (or indeed the same) method, arrives at a very different result is not enough to show the required incorrectness or illegality. This follows from the recognition that "there are various ways for determining an accurate estimate of fair market value," *District of Columbia v. Rose Assoc.,* 697 A.2d 1236, 1238 (D.C. 1997), and that the government therefore is given sizeable discretion in "choosing the method or approach for an assessor to use in estimating the market value of a particular property." *Wolf v. District of Columbia,* 597 A.2d 1303, 1308 (D.C.1991) (quoting *Safeway Stores,* 525 A.2d at 209).

The taxpayer's obligation to show error in the assessor's methodology is confirmed by numerous other decisions. In *Wolf v. District of Columbia,* 609 A.2d 672 (D.C. 1992), error was alleged in the assessor's use of "a predetermined mathematical formula and his calculator." *Id.* at 675 (internal quotation marks omitted). Rejecting that contention, we stated:

> The fact that [the assessor calculated the tax] by formula—taking into account the property's site and corner location and its square footage—is of no consequence, unless appellants can prove either that the basis of the formula is unlawful or that the assessor's computation of the formula in this case was inaccurate. Although appellants claim the District did not assess their "particular" parcel of land and used "arbitrary" figures in its calculation, they adduced no evidence at trial to support those claims.

*Id.* (citations and footnote omitted). Years before, we had emphasized the taxpayer's burden to prove error in the District's method of valuation or computation, not merely the soundness of its own method. In *District of Columbia v. Capital Laundry & Dry Cleaners, Inc.,* 106 A.2d 695 (D.C.1954), the court concluded:

> [T]he [taxpayer] failed to show that the assessment of its personal property was arbitrary or capricious, or that it was even erroneous. By proving only *its* accounting method for computing its taxes, it showed nothing incorrect on the Government's part in assessing on the basis of higher valuations.

*Id.* at 697 (emphasis added). Recently, we again confirmed that "the mere presence of an alternative viewpoint does not satisfy the taxpayer's burden ... to show error in the District's assessment ." *Square 345 Assoc. Ltd. Partnership v. District of Columbia,* 721 A.2d 963, 968 (D.C.1998); *see also District of Columbia v. Beatley,* 665 A.2d 204, 206 (D.C.1995) ("[B]ecause the assessment was neither incorrect nor illegal, it must be accepted even if an alternative method might have yielded a different result."); *Wolf v. District of Columbia,* 611 A.2d 44, 49 (D.C.1992) (*Wolf II* ) ("Appellants offered no evidence to counter Mr. Harps' [the court-appointed expert's] methodology or to show that his valuations were erroneous."); *Brisker v. District of Columbia,* 510 A.2d 1037, 1039 (D.C.1986) ("[T]he taxpayer bore the burden of proving the incorrectness of the government's assessment," which it met "when the evidence showed that the District's 1983 valuation was flawed."); *and compare George Washington Univ. v. District of Columbia,* 563 A.2d 759, 761 (D.C.1989) (remanding for resolution of factual dispute where taxpayer had argued in trial court "that the 'stabilized market rent' and the 'comparable sales' analysis [the District's appraiser] used to calculate his assessment were conducted with reference to non-comparable properties").

 We therefore agree with the trial court's conclusion that, "[r]egardless of the magnitude, a difference between two estimations of market value does not illustrate ... that one or the other is incorrect":

[i]n order to meet [its] burden of proving incorrectness, the [taxpayer] must attack the District's assessment and [demonstrate] error, either independently, by showing, for example, that the assessor failed to fulfill the statutory requirements of [D.C.Code] §§ 47–802(4) and 47–820(a) . . . , or dependently, by showing that its own appraisal is more accurate than the District's assessment, not . . . merely different. [YWCA], relying solely on the discrepancy between the assessor's and [its own] appraiser's proposed market values as indicative of excessiveness in the District's assessment, has done neither.[2]

■ The required showing imposes no undue hardship on the taxpayer. Super. Ct. Tax. R. 3(a) incorporates the general civil rules of procedure concerning discovery, thereby providing the taxpayer with adequate means to learn beforehand the methodology used by the District's assessor and prepare any challenge to its correctness. Moreover, although the administrative review procedures the taxpayer must pursue antecedently are "informal" and "often non-adversarial," *District of Columbia v. New York Life Ins. Co.,* 650 A.2d 671, 672 (D.C.1994), they furnish an additional opportunity for the taxpayer to discover the basis of the assessment and initiate any attack upon it.

Since YWCA offered no proof of the incorrectness of the assessments other than the differing valuations of its own appraiser, it failed to meet its burden of proof. The order of the Superior Court sustaining the assessments is, therefore,

*Affirmed.*

**2.** Although YWCA contends that there *was* some testimony about how the District's assessor reached his valuation and how the assessment was erroneous, the trial judge rejected this argument as a matter of fact, finding that the testimony in question related not to the disputed tax years (1992–1994) but only to a subsequent challenge at the agency level to the assessment for tax year 1995. That factual determination is not clearly erroneous. *See* D.C.Code § 17–305(a) (1997).

We likewise find no abuse of discretion in the trial judge's exclusion of evidence pertaining to a reduction of the 1995 assessment by the administrative review body, the Board of Real Property Assessments and Appeals ("BRPAA") (which had replaced the former Board of Equalization and Review in 1993 during the pendency of this litigation). *See Square 345, supra,* 721 A.2d at 968–69 (upholding as within trial court's discretion rejection of previous year's assessment on relevancy grounds). A tax challenge filed in Superior Court (after required exhaustion of administrative remedies) "is subject to de novo evaluation on the basis of evidence presented at trial." *Id.* at 965. As the trial judge explained here, he could not assume that the BRPAA's decision concerning the 1995 tax year assessment was correct or that, if it was, it did not reflect a change in the economy or conditions rather than a decision to correct a longstanding error in the assessment pattern for the property.