The GEORGE WASHINGTON UNIVER-
SITY and Potomac Electric Power
Company, Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 87–1002.

District of Columbia Court of Appeals.

Argued Dec. 13, 1988.
Decided Sept. 8, 1989.

Walter A. Smith, Jr., with whom Richard
J.M. Poulson, Robert B. Cave, Edward A.

Ryan, and David F. Grady, Washington,
D.C., were on the brief, for appellants.

Edward E. Schwab, Asst. Corp. Counsel,
with whom Frederick D. Cooke, Jr., Corp.
Counsel at the time the briefs were filed,
and Charles L. Reischel, Deputy Corp.
Counsel, Washington, D.C., were on the
brief, for appellee.

Before FERREN, BELSON, and
TERRY, Associate Judges.

FERREN, Associate Judge:

Appellants, the George Washington
University (GWU) and Potomac Electric
Power Company (PEPCO), appeal a trial
court order approving for tax year 1985 a
$46,000,000 assessment of the Thomas Edison Building (the Building), located at 1900
Pennsylvania Avenue, N.W. Because the
trial court order does not provide findings
of fact and conclusions of law sufficient for
meaningful appellate review, we reverse
and remand.

The procedural history of this case is as
follows: The District of Columbia's Department of Finance and Revenue originally
assessed the Building in the amount of
$50,576,000. GWU, the owner of the Building, and PEPCO, which leases the Building
under a thirty-year lease expiring in March
2002 and is responsible for payment of
taxes, appealed the assessment to the
Board of Equalization and Review (the
Board), which reduced the valuation to
$40,750,000. Appellants paid the tax on
the revised assessment and then filed a
petition in the Tax Division of the Superior
Court challenging the District's assessment
as contrary to local statutes and regulations and seeking a partial refund. At a
May 8, 1986, trial on stipulated evidence,
the parties primarily presented legal arguments concerning the proper valuation of
encumbered property under District of Columbia law.[1] The stipulated record includ-

---

1. In its statement of pretrial proceedings filed on April 28, 1986, the trial court stated that "the sole issue to be litigated is the question of the proper method of valuation of the subject property given the unique nature of the long-term lease arrangement." The statement limited trial to argument by counsel and questions by the

court, with the experts who had prepared the appraisals on call if the court needed their testimony. The court also reminded the parties of an earlier ruling that the bona fides of the GWU–PEPCO lease were not at issue and would not be considered at trial.

ed, among other exhibits, two expert appraisals: the appellant's appraisal, conducted by William S. Harps, valuing the Building at $25,800,000, and the District's appraisal, conducted by Anthony Reynolds, valuing the Building at $46,000,000.[2]

On February 4, 1987, the trial court issued an order ruling that the District's appraisal violated local laws and regulations, upholding appellants' $25,800,000 appraisal, and ordering a partial refund of taxes paid. More specifically, the order, adopting practically verbatim appellants' proposed findings of fact and conclusions of law, held that the District's appraisal was invalid because it failed to take into account the terms of the existing long-term lease encumbering the Building, effectively taxing PEPCO's leasehold interest in violation of the Real Property Assessment and Tax Act (the Act), D.C.Code §§ 47–801 to 47–863 (1987). According to the court, the Act defines taxable real property as "real estate identified by plat," id. § 47–802(1), and not as intangible interests or personal property. The Reynolds appraisal also violated the Act, according to the court, by ignoring actual income and basing its assessment of "income earning potential" on a stabilized market rent computed on the basis of six leases for other office properties. The court concluded that the language of the Act setting forth "income earning potential" as a factor to be considered in determining the "estimated market value" or assessed value of the property for taxation purposes, id. § 47–820(a), required that the rents actually to be earned by GWU under its long-term lease to PEPCO be used in the assessment calculation. Finally, the court concluded that the Reynolds assessment violated District of Columbia real estate valuation regulations because (1) it failed to consider actual rents as demanded by 9 DCMR § 307.5 (1986), and (2) it based both its "stabilized market rent" figure and its "comparable sales analysis," see id. § 307.3, on non-comparable properties.

The District filed a timely motion for reconsideration. After reviewing the briefs of the parties and hearing additional argument, the trial court granted the District's motion on July 30, 1987, approving an assessment of the Building in the amount of $46,000,000. In a brief four-page order, the trial court summarized the proceedings and the two appraisals submitted at the May 8, 1986 hearing. The trial court then vacated its earlier findings of fact and conclusions of law and set aside the February 4, 1987 order, concluding it was "at variance with earlier decided cases." The trial court cited its own decision in Greene v. District of Columbia, Tax Docket No. 3561–85 (D.C.Super.Ct. June 12, 1986)—which this court subsequently affirmed, see Memorandum Opinion and Judgment, No. 86–1308 (D.C. December 3, 1987) (unpublished)—and quoted its conclusion in Greene: "[i]t is not axiomatic that the assessment is to be reduced because of a long-term lease. The value of all interests in the property must be evaluated and the existence of a favorable or unfavorable lease does not limit the ability of the tax assessor to compare the encumbered properties with similar properties not so encumbered." Greene, at 11. The court also cited this court's decision in Safeway Stores, Inc. v. District of Columbia, 525 A.2d 207 (D.C.1987), which had been issued after the trial court's February 4, 1987 order in this case. The court, in particular, noted our conclusion that the Department of Finance and Revenue, when valuing leaseback property, would be justified in adopting a presumption against recognizing as an encumbrance a long-term lease which had been negotiated as part of the sale-leaseback arrangement. See id. at 212. The trial court pointed to a concern expressed both in Safeway and in Greene that property owners not enter into lease arrangements which reduce property tax obligations to the community.

Appellants contend that the trial court's July 30, 1987 order erroneously adopted the Reynolds valuation and that the court's

---

**2.** At trial, the District stated it was not relying on the original appraisal conducted by the Department of Finance and Revenue (as revised by the Board) as the basis for its valuation of the Building.

February 4, 1987 order had been correct. Alternatively, appellants argue that we may not affirm the July 30, 1987 order because there are no findings of fact supporting the court's ultimate legal conclusion adopting the Reynolds appraisal. We agree with the latter contention.

D.C.Code § 47–3303 (1987) provides that, on hearing appeals from the Board, the Tax Division of the Superior Court "shall make separate findings of fact and conclusions of law, and shall render its decision in writing." *See also Wyner v. District of Columbia,* 411 A.2d 59, 60 (D.C. 1980). Our review of appeals from the Tax Division is the same as it is for other civil cases tried without a jury. D.C.Code § 47–3304(a) (1987). This means the trial court's factual findings are binding upon this court "unless they are clearly erroneous; if the findings are acceptable, we will not disturb the court's judgment unless it is plainly wrong or without evidence to support it." *Rock Creek Plaza–Woodner Ltd. Partnership v. District of Columbia,* 466 A.2d 857, 859 (D.C.1983); *see* D.C.Code § 17–305(a) (1981). The statutory scheme accordingly makes clear that, before this court can properly review the trial court's approval of a particular tax assessment, the trial court must provide written findings of fact sufficient to explain why the court adopted the particular appraisal it relied upon.

Here, the trial court's order of July 30, 1987, set aside the findings of fact and conclusions of law in the February 4, 1987 order and substituted (1) a summary of the tax proceedings to date, (2) very brief descriptions of appellants' and the District's respective appraisals, and (3) a two-paragraph legal discussion quoting language from decisions in support of the taxation of leasehold interests. By approving an assessment of $46,000,000, the trial court apparently found that appellants had failed to meet their burden of proving the incorrect-

ness of the government's assessment, *see Brisker v. District of Columbia,* 510 A.2d 1037, 1039 (D.C.1986), and that there was evidence in the stipulated record supporting the validity of the Reynolds appraisal.

This court, however, is not equipped to scour the record to select competent evidence we believe supports the trial court's ultimate legal conclusion. Even if the trial court's conclusion that leasehold interests can be taxable as real property is correct— an issue we do not decide here—the court must still provide factual findings supporting its application of that rule of law to the assessment at issue in this case. We cannot review the trial court's adoption of a particular appraisal without the benefit of factual findings supporting the validity of that appraisal. Furthermore, appellants— both at trial and on appeal—have argued that the "stabilized market rent" and the "comparable sales" analysis Reynolds used to calculate his assessment were conducted with reference to non-comparable properties. This is a factual dispute, *see Brisker,* 510 A.2d at 1039, which the trial court in the first instance must resolve.[3]

In sum, because the trial court did not make factual findings supporting selection of the Reynolds appraisal, we have no basis for determining whether the court's legal ruling is sustainable on this record or is without evidence to support it. *See* D.C. Code § 17–305(a) (1981). Accordingly, we reverse and remand the July 30, 1987 order for such proceedings as are necessary for the trial court's preparation of findings of fact and conclusions of law concerning the proper 1985 tax valuation for the Building.

*Reversed and remanded.*

---

**3.** In this regard, we note that the trial judge *chose not to call the expert witnesses—whom* she asked the parties to make available at trial— to provide testimony on the comparability issue. On remand, she will of course be free to hear additional expert testimony on the validity of the appraisals.