**DISTRICT OF COLUMBIA, Appellant**

v.

**W.T. GALLIHER & BROTHER, INC., Appellee.**

No. 92–TX–1128.

District of Columbia Court of Appeals.

Argued March 1, 1994.

Decided March 30, 1995.

James C. McKay, Jr., Asst. Corp. Counsel, with whom John Payton, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellant.

Stanley J. Fineman, with whom Louis P. Robbins and David A. Fuss, Washington, DC, were on the brief, for appellee.

Before TERRY, STEADMAN, and SCHWELB, Associate Judges.

TERRY, Associate Judge:

The District of Columbia appeals from a summary judgment requiring it to reduce the assessed value of appellee's property by more than five million dollars for Tax Year 1989,[1] and declaring that appellee is entitled to a property tax refund of $103,317.93 plus interest. The District contends that summary judgment was inappropriate because there was a genuine issue of fact as to the market value of the property, and that the trial court violated D.C.Code § 47–3303 (1990) by failing to make written findings of fact in support of its decision. Appellee W.T. Galliher & Brother, Inc. ("Galliher"), maintains that the actual issue before the trial court was whether the eventual ruling of the Board of Equalization and Review ("the Board") on Galliher's motion for reconsideration could be given legal effect after the Board admitted plain error in its initial ruling, particularly when the District induced the Board not to act on Galliher's motion in a timely manner by misinforming the Board as to the actual date of the Mayor's certification of the tax roll. Since this case presents strictly legal issues, Galliher contends that the trial court correctly granted its summary judgment motion. We agree with Galliher and affirm the judgment.

---

1. Tax Year 1989 ran from July 1, 1988, through June 30, 1989.

## I

Galliher owns an office building at 1920 N Street, N.W. The building is situated in a medium-high density "special purpose" zoning district (SP-2), in which the zoning regulations generally limit the occupancy of office space to non-profit organizations, labor unions, and professional persons such as doctors or lawyers. *See* 11 DCMR § 508.1 (1994).[2] General retail or commercial occupancy is not allowed in an SP building except for "accessory uses" such as newsstands or barber shops. 11 DCMR § 502.1 (1994).[3] For Tax Year 1989, the District assessed the value of Galliher's property at $23,913,000, up from the previous year's assessment of $17,100,000.

On April 4, 1988, Galliher appealed the assessment to the Board, claiming that the assessor had failed to take the building's zoning limitations and lack of "upside potential" into account when calculating its fair market value.[4] Moreover, Galliher maintained that the building was not located in a "prime commercial neighborhood" and pointed out that its net income had declined during the previous four years. After a hearing, the Board on May 1 upheld the assessment, stating in its order that "[t]he majority of the leases expire between 1989–1990, the appraiser (owners) did not adequately consider the upside potential at that time."[5]

Galliher filed a motion for reconsideration with the Board, claiming that "all of the leases expiring between 1988–1989, with one exception, contain renewal options. The so-called 'upside potential' considered by the assessor, and endorsed by the Board, does not exist." Additionally, Galliher reiterated that the District's tax assessor had failed to consider the building's zoning limitations and its less than ideal location.

In proceedings before the Board, opposing parties are required to respond to motions for reconsideration within two business days after receipt. 9 DCMR § 2020.3 (1994). Since Galliher's motion was filed on Thursday, June 9, the deadline for filing a response was Monday, June 13. The Office of the Corporation Counsel, however, did not file the District's opposition until June 27, two weeks late, and even then it neglected to serve a copy of the opposition on Galliher. In its response, the District argued that Galliher's motion for reconsideration did not present any new arguments and that, in any event, the Board's first decision did not amount to plain error.[6] The District also maintained that, under 9 DCMR § 2020.4 (1994), the Board could not consider a motion for reconsideration after the certification of the tax roll by the Mayor, which it said had occurred on June 14. In fact, however, the tax roll had not yet been certified when the District filed its opposition.[7]

On July 11, 1988, the Board sent a letter to Galliher's counsel stating that it had "decided to grant" the motion for reconsideration because its original decision "involve[d] plain error." The Board concluded, however, that it lacked jurisdiction to grant the relief requested:

**2.** Some of the regulations involved in this case have been renumbered in the most recent codification. Throughout this opinion, therefore, we shall cite the current version of each regulation.

**3.** 11 DCMR § 500.2 (1994) provides:
The major purpose of the SP district shall be to act as a buffer between adjoining commercial and residential areas, and to ensure that new development is compatible in use, scale, and design with the transitional function of this zone district.

**4.** In asserting that the building had "little or no upside potential," Galliher was referring to the fact that most of the space in the building was leased through 1990, thus precluding any significant increase in revenue during Tax Year 1989.

**5.** The Board's decision is set forth on a printed form, with the quoted language handwritten in a section headed "Basis for Decision." Because the handwriting is difficult to read, the word we have interpreted as "appraiser" may instead be "appraisal."

**6.** 9 DCMR § 2020.5 (1994) states:
No decision of the Board ... shall be altered or revised upon rehearing except upon a finding of plain error.

**7.** It is undisputed that the tax roll was not actually certified until June 29, 1988. Thus not only did the District fail to respond to the motion for reconsideration in a timely manner, but when it did, it gave the Board erroneous information as to whether it still had jurisdiction to grant Galliher's motion.

[D]ue to the delay in response from the Office of Corporation Counsel on behalf of the Department of Finance and Revenue (D.F.R.) and the confusion and conflicting dates of certification of the Assessment Roll from D.F.R. and Corporation Counsel, the Board was unable to act on these cases prior to the certification of the Assessment Roll, and the Board no longer has jurisdiction on these cases for Tax Year 1989.

The Board went on to say that, if it had jurisdiction, it would have found that the value of Galliher's property was $18,823,447, not the originally assessed $23,913,000. Galliher's counsel then sent a letter to the Department of Finance and Revenue requesting that "the determinations made by the Board, as reflected in the [July 11] letter, be implemented" for Tax Year 1989. Several weeks later, after counsel's letter had elicited no response, counsel sent a similar request to the Office of Real Property Taxes. That request also was ignored or overlooked, and the District proceeded to tax Galliher's property at the assessed value of $23,913,000.

Galliher paid the tax for Tax Year 1989, totaling $485,433.90, and filed the instant petition in the Superior Court challenging the assessment.[8] In its petition Galliher alleged that the Corporation Counsel was responsible for the Board's erroneous belief that it lacked jurisdiction to rule on the motion for reconsideration. Galliher also reiterated many of the substantive challenges to the assessment which it had previously raised before the Board. In its prayer for relief, Galliher asked the court to reduce the assessed valuation of the property to the amount stated by the Board in its July 11 letter and to order a refund, with interest, of the excess taxes paid.

Following discovery, Galliher moved for summary judgment. In support of its motion, Galliher contended:

Based upon the government's delay and misrepresentations and the Board's finding that its initial decision was plainly erroneous, petitioner is entitled, as a matter of law, to have [the District] implement the Board's decision and to refund to petitioner its overpayment of taxes in the amount of $103,317.93 plus interest.

The court granted Galliher's motion, explaining that the Board had conceded plain error and that, "but for some delay on the part of the Corporation Counsel which prevented [the Board] from taking this matter up, it would have taken it up and it would have made a determination in rectifying what it considered to be plain error." From that ruling the District noted this appeal.[9]

II

■ The District first contends that the trial court erred in entering summary judgment in Galliher's favor when a genuine issue of material fact—the market value of the property—remained unresolved. We disagree. The actual issue before the court was not the value of the property but whether the Board's admission of plain error in its July 11 letter could be used by the trial court as a basis for reducing the initial assessment under D.C.Code § 47–3303. The facts relevant to this issue are not in dispute. It is uncontested that on June 9, 1988, Galliher filed a timely motion for reconsideration with the Board. On June 27 the District filed its opposition and asserted—erroneously—that the Board could not entertain Galliher's motion because the tax roll had already been certified. It is also uncontested that the Mayor did not actually certify the tax roll until June 29. On July 11 the Board conceded in a letter to Galliher's counsel that its earlier decision had "involve[d] plain error" and that the actual value of Galliher's property was $18,823,447.

8. Under D.C.Code § 47–3303 (1990), "[a]ny person aggrieved by any [tax] assessment by the District ... [may] appeal from the assessment to the Superior Court," provided that the tax is paid first, together with any applicable penalties and interest. *See First Interstate Credit Alliance, Inc. v. District of Columbia*, 604 A.2d 10 (D.C.1992). The appeal must be filed within six months after the date of the assessment.

9. We note, in passing, that the Board of Equalization and Review was abolished in 1993 and replaced by a new Board of Real Property Assessments and Appeals, with somewhat different powers and responsibilities. *See* D.C.Code § 47–825.1 (1994 Supp.).

Given these undisputed facts, we hold that the trial court properly ruled that it could decide whether to give legal effect to the Board's July 11 letter. We therefore turn to the merits of that issue.

### III

■ The District contends that the Board lacked authority to grant Galliher's motion for reconsideration after the tax roll had been certified. Even though the Corporation Counsel misinformed the Board that the certification had occurred when in fact it had not, the District now contends that once the Mayor acted on June 29, the Board could not grant relief from the error into which it had been led on June 27 by the Corporation Counsel. The District relies on 9 DCMR § 2020.4 (1994), which states:

> The Board or Panel shall determine, in its discretion, whether a rehearing shall be held, provided that all rehearings shall be held prior to the certification of the revised assessment roll by the Mayor.

The District argues that this provision places a mandatory restriction on the Board's authority to entertain reconsideration motions. We think the District reads the regulation too broadly. We note that it applies to "rehearings," whereas the Board in this case explicitly stated that it was treating Galliher's request as a motion for "reconsideration." Thus it is not certain that section 2020.4 applies to this case at all.

■ But even if section 2020.4 is read as applying to motions for reconsideration,[10] Galliher argues that it imposes a directory rather than mandatory duty on the Board. While the use of the word "shall" in a statute or regulation "creates a duty, not an option,"[11] this court has held that provisions regulating the performance of official duties by public employees are normally directory, especially when a mandatory construction would result in injury to a private citizen. *JBG Properties, Inc. v. District of Columbia Office of Human Rights,* 364 A.2d 1183, 1185 (D.C.1976); *see Abolaji v. District of Colum-*

bia Taxicab Comm'n, 609 A.2d 671, 672 (D.C. 1992); *Teamsters Local 1714 v. Public Employee Relations Board,* 579 A.2d 706, 709–710 (D.C.1990); *Vann v. District of Columbia Board of Funeral Directors & Embalmers,* 441 A.2d 246, 248 (D.C.1982). If the statute or regulation at issue expressly terminates an agency's authority to act on a matter after a certain time or occurrence, this rule does not apply. *JBG Properties, supra,* 364 A.2d at 1185. But in the absence of any such specific limitation on the authority of the agency to act, a reviewing court may engage in "a balancing test to determine whether any prejudice to a party caused by agency delay is outweighed by the interests of another party or the public in allowing an agency to act after the statutory time period has elapsed." *Vann, supra,* 441 A.2d at 248 (footnote omitted). Galliher maintains that the language of the regulation, by itself, does not foreclose the Board from at least considering post-hearing motions after the certification of the tax roll, and that we should therefore apply this balancing test to the instant case, following "traditional equitable principles...." *JBG Properties, supra,* 364 A.2d at 1186.

Although Galliher's argument is not without force, we need not rely on it in deciding this case. We hold instead that the trial court, given its statutory power to review and modify assessments, *see* D.C.Code § 47–3303, may impose a revised assessment consistent with what the Board would have done had it not felt bound by the deadline which it thought had passed. The prejudice suffered by Galliher as a result of the District's misrepresentation, which caused the Board to refrain from ruling on the motion for reconsideration when it should have ruled, gave the court sufficient basis to conclude that the Board's eventual ruling—that, assuming it had jurisdiction, it would have found the value of the property to be $18 million, not $23 million—should be given effect, notwithstanding the Mayor's certification of the tax roll on June 29. Indeed, it is clear from the

---

**10.** There is no specific regulation dealing with motions for reconsideration as distinguished from motions for rehearing.

**11.** *Dupont Circle Citizens Ass'n v. District of Columbia Board of Zoning Adjustment,* 530 A.2d 1163, 1170 (D.C.1987) (citations omitted).

record that while Galliher complied with all procedural requirements in challenging the initial assessment of its property, it was the District's error that led the Board to believe it no longer had the power to act on Galliher's motion. The courts are not without power to correct such errors. *Cf.* D.C.Code § 17–306 (1989) (this court "may affirm, modify, vacate, set aside or reverse any order or judgment" or may grant such other relief "as is just in the circumstances").

The District's mishandling of this case is twofold. First, the District violated 9 DCMR § 2020.3 (1994) by filing its opposition more than two weeks after Galliher filed its motion for reconsideration.[12] Moreover, the opposition did not refer at all to Galliher's motion, but instead was in the form of a blanket response to all of the post-hearing motions filed by taxpayers which the District thought were meritless.[13] Thus, besides being unacceptably late, the District's opposition failed to provide the Board with any meaningful information that it could have used in considering this particular motion. Second, and more importantly, the District affirmatively misled the Board as to the actual date of certification by the Mayor. Even though its mistake was apparently unintentional, the District's erroneous assertion that the tax roll had been certified on June 14—fifteen days before the actual certification date of June 29—led the Board to believe that it was without authority to consider the merits of Galliher's motion.

The Office of the Corporation Counsel (OCC), by making a critical misrepresentation of fact, short-circuited the administrative process and cut off Galliher's rights. By giving the Board erroneous information about the date of certification, the OCC induced the Board to believe that it lacked authority to change its initial ruling, even if it concluded (as it ultimately did) that that ruling was wrong. Because this action by the OCC, in its capacity as the city's chief legal representative, prevented the Board from performing its duty properly, we hold that the trial court had sufficient grounds to do what the Board said it would have done, *i.e.*, to lower the assessment. Moreover, by stating its conclusion that the initial ruling amounted to plain error, the Board eliminated any need to remand this case for additional findings of fact.

The District argues that the prejudice incurred by Galliher was minimal because Galliher had a right to a *de novo* hearing under D.C.Code § 47–3303. Not only do we disagree with the District's characterization of the prejudice that Galliher suffered (a $5 million error in a property assessment is anything but minimal), but we note that the trial court acted well within its statutory authority in disposing of this case in the way it did. While Galliher would have been entitled to a full evidentiary hearing before the trial court if there had been a need for one, there was no such need in this case because there was no pertinent factual dispute to resolve (as we shall discuss hereafter in part IV). Under section 47–3303, the trial court has the power to "affirm, cancel, reduce, or increase the assessment" of an aggrieved taxpayer. We held in *National Trust for Historic Preservation v. District of Columbia,* 498 A.2d 574, 576 (D.C.1985), that in exercising this power, the court is authorized to "inquir[e] into and dispos[e] of all relevant questions of fact and law." That is exactly what the court did here, and the District has no basis for suggesting that it should have done something else instead.[14]

---

12.  Section 2020.3 provides:
   Upon receipt of a party's written request for rehearing, the petitioner or the Director, whichever is applicable, shall have two (2) business days in which to prepare and file with the Board and the other party a response to the rehearing request.

13.  The opposition stated, in pertinent part:
   The Department of Finance and Revenue (DFR) has submitted to [the Office of the Corporation Counsel] for response several requests for rehearings received by it on or about June 9th. Each request asks the Board to redetermine each subject property's value. Each request seems merely to restate the taxpayer's position asserted earlier. The ones we have reviewed point out no mathematical or plain error.

14.  We note, moreover, that the District had no right to a *de novo* hearing because it was not entitled to seek judicial review of the Board's decision on Galliher's motion for reconsideration. Under the statutory scheme, only the aggrieved taxpayer may (after paying the tax) chal-

## IV

The District also argues that D.C.Code § 47–3303 requires the trial court to make written findings of fact in all tax assessment cases so that this court may conduct meaningful appellate review. In pertinent part, section 47–3303 provides:

The [Superior] Court shall hear and determine all questions arising on appeal and shall make separate findings of fact and conclusions of law, and shall render its decision in writing. The Court may affirm, cancel, reduce, or increase the assessment.

The District maintains that because the trial court did not follow this requirement, this court cannot properly consider the present appeal. In support of this argument, the District relies on *George Washington University v. District of Columbia*, 563 A.2d 759 (D.C.1989), for the proposition that "written findings of fact, as well as written conclusions of law, are required for appeals from tax assessments." Its reliance is misplaced.

In *George Washington University* two taxpayers, the owner and lessee of an office building, appealed from a Superior Court order sustaining the District's assessment of the building's value. The taxpayers challenged the merits of the trial court's decision and also argued that the court's findings of fact did not adequately support its legal conclusion. In agreeing with the latter argument, we said:

The statutory scheme ... makes clear that, before this court can properly review the trial court's approval of a particular tax assessment, the trial court must provide written findings of fact sufficient to explain why the court adopted the particular appraisal it relied upon.

\*     \*     \*     \*     \*     \*

This court ... is not equipped to scour the record to select competent evidence we believe supports the trial court's ultimate legal conclusion.... We cannot review the trial court's adoption of a particular appraisal without the benefit of factual findings supporting the validity of that appraisal.

*Id.* at 761. According to the District, the holding in *George Washington University* mandates reversal in the instant case.

What the District fails to recognize is that trial courts need not—indeed, cannot—make findings of fact when granting a motion for summary judgment. The court's task in ruling on a summary judgment motion is not to resolve any factual issues but, rather, to determine whether any material issues of fact exist. *International Underwriters, Inc. v. Boyle*, 365 A.2d 779, 782 (D.C.1976). If there are none, and if the moving party is entitled to judgment as a matter of law, the motion must be granted. Super.Ct.Civ.R. 56(c).[15] No court can grant a summary judgment without first concluding that there are no facts to be found—*i.e.*, no factual issues to be resolved—because all the material facts are undisputed.[16] To require the court to make findings of fact when granting a motion for summary judgment would be fundamentally inconsistent with the very nature of summary judgment.

In the *George Washington University* case, the trial court rendered its decision after an evidentiary hearing, thus making applicable the findings-of-fact requirement of section 47–3303. In the case at bar, however, the trial court granted a motion for summary judgment in a manner fully permissible under the rules. This case therefore comes before us in a different procedural posture. Because there were no issues of material fact

lenge an assessment in the Superior Court; the District has no corresponding right.

15. Civil Rule 56 is expressly made applicable to proceedings in the Tax Division by Super.Ct.Tax R. 3(a).

16. That is precisely what the court concluded in this case. At the end of the hearing, after listening to the arguments of both counsel, the court said:

All right. In this matter, gentlemen, I don't believe there is any material issue of fact in this matter as to the correct assessment of this property, based upon what the board said it would have determined in this matter.

So based on that, I'm going to grant the motion for summary judgment and reduce the assessment [to the figure stated by the Board in its July 11 letter].

The court's final written order embodied this oral ruling.

in this case, there was no need for an evidentiary hearing. There were thus no findings of fact to be made, and the language from section 47–3303 on which the District relies does not apply.

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*