**James A. LINEN, Appellant,**

v.

**Douglas LANFORD, Appellee.**

**Nos. 06–CV–1109, 06–CV–1180.**

District of Columbia Court of Appeals.

Argued Dec. 11, 2007.

Decided April 3, 2008.

---

3. *See supra* note 1.

Morris R. Battino, Washington, for appellant.

Stephen O. Hessler, Washington, for appellee.

Before FISHER and BLACKBURNE–RIGSBY, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

A residential property tenant brought suit against his landlord alleging that the landlord violated his rights under the Tenant Opportunity to Purchase Act, D.C.Code § 42–3404.02 *et seq.* (2001). The tenant argued that the property was a two-unit accommodation and that thus under D.C.Code § 42–3404.10(3) he was entitled to a ninety-day settlement period rather than the sixty-day period that the landlord afforded him. The trial court granted the landlord's motion for summary judgment, ruling that the property was a single-family dwelling and that the landlord did not violate the Tenant Opportunity to Purchase Act (TOPA) by providing the tenant with a sixty-day settlement period. Following the grant of summary judgment, the trial court granted the landlord's motion for post-judgment relief and ruled that the landlord was entitled to receive attorneys' fees and that he could retain the tenant's deposit. We affirm the trial court's order granting summary judgment, but we reverse its order that the deposit should be forfeited and transferred to the landlord and remand that issue to the trial court for further proceedings. The tenant's challenge to the trial court's

award of attorneys' fees is not properly before us and thus we must dismiss this portion of his appeal.

## I.

Douglas Lanford, the appellee, is the owner and landlord of a residential property located at 3140 Q Street N.W. ("the property"), in the Georgetown area of Washington, D.C. James Linen, the appellant, is the sole tenant at the property. On August 25, 2005, Lanford provided Linen with a written offer of sale for the property as required by the Tenant Opportunity to Purchase Act and this document identified the property as a single-family dwelling. In correspondence dated September 6, 2005, counsel for Linen provided Lanford's attorney with written notice that his client was interested in purchasing the property and indicated that "[w]e desire to exercise the statutory 60 days negotiation period and 60 days to secure financing." On October 3, 2005, Linen provided Lanford with a signed copy of the same regional sales contract that Lanford had entered into with a prospective third-party buyer. In attached correspondence, Linen's attorney explained that "[t]o avoid the issue of whether my client matches the third party contract, we merely changed the name on the contract, initialed, and signed it." However, in the same letter, Linen's counsel objected to Lanford's characterization of the property as a single-family dwelling and asserted that his client was entitled to the settlement period for two-unit accommodations under TOPA. Although the copy of the sales contract signed by Linen as it appears in the appellant's appendix is largely illegible, one can read a handwritten notation appearing in the bottom margin of the third page that states "settlement to occur on or before December 1, 2005." On a hand-drawn line next to this notation, there is an indecipherable signature. Counsel for Lanford wrote to tenant Linen's attorney on October 4, 2005, and indicated that his client would be unable to review the purchase offer until Linen suggested a settlement date. Linen's counsel responded, in a November 7, 2005 letter, by saying that TOPA dictated the deadline for settlement but he failed to indicate his client's view as to the specific deadline for settlement in this transaction.

Linen filed suit against Lanford on December 2, 2005, alleging that Lanford failed to allow him the ninety-day settlement period TOPA requires for two-unit dwellings. The landlord filed his answer and counterclaims on January 5, 2006. On March 16, 2006, the landlord moved for summary judgment, arguing that the property is a single-family home and that he had allowed the tenant sixty-days to settle, the minimum time period required under TOPA. The trial court granted the landlord's motion for summary judgment, basing its ruling in large part on the fact that "[t]here is overwhelming evidence that the property is a single-family home."[1] In addition, the trial court ruled that, as the property was a single-family home, the landlord did not violate TOPA by requiring a settlement date of December 1, 2005.

Following the grant of summary judgment on the complaint, Lanford moved to

---

1. As we discuss in more detail below, in reaching its conclusion that the property is a single-family home, the trial court noted that: (1) in an adjudicative proceeding, the D.C. Department of Consumer and Regulatory Affairs (DCRA) had found that the landlord had been illegally renting a single-family home as a two-unit accommodation; (2) the landlord, after the DCRA proceeding, had filed an amended registration form classifying the house as a single-family home; (3) a 2005 Superior Court order had granted the landlord "reasonable access to all portions of the single-family house[;]" and (4) the property is located in the R–3 residential zone where two-family homes are prohibited.

dismiss his counterclaims without prejudice with the aim of securing a final judgment in the case. In addition, Lanford filed a motion for post-judgment relief asking the court to award him attorneys' fees and order that Linen forfeit the five percent deposit that had been made pursuant to the contract of sale. Lanford argued that specific provisions in the contract he entered into with Linen permitted the court to award him the relief that he sought. Linen opposed the motion for post-judgment relief on the ground that the provisions of the contract providing the landlord the right to retain the deposit and recover attorneys' fees were in contravention of TOPA. On September 13, 2006, the trial court granted the landlord's motion for post-judgment relief, ordering that Linen release the deposit to Lanford and pay the attorneys' fees, of an amount not yet determined, that Lanford incurred in defending the action and securing summary judgment. Linen appeals from the trial court's grant of summary judgment and its order compelling him to release the deposit and pay attorneys' fees.

## II.

Linen argues on appeal that the trial court erred by ruling that: (1) the property is a single-family home; (2) the landlord provided the tenant with a settlement period that satisfied the minimum required by TOPA; (3) the landlord was entitled to retain the tenant's deposit under the contract although the court made no finding of bad faith as required by TOPA; and (4) the landlord was entitled to attorneys' fees pursuant to the contract even though he is not an aggrieved party within the TOPA framework. We first analyze the trial court's rulings that the property is a single-family home and that Linen was provided with the settlement period required by TOPA—the two bases for its grant of summary judgment. Second, we consider whether the landlord was entitled to post-

judgment relief in the form of Linen's forfeited deposit and attorneys' fees.

### A. Summary Judgment

 It is well-established that to prevail on a motion for summary judgment, the moving party must "demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law." *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C.1994) (en banc) (internal citations omitted). Summary judgment is properly granted "if (1) taking all reasonable inferences in the light most favorable to the nonmoving party, (2) a reasonable juror, acting reasonably, could not find for the non-moving party, (3) under the appropriate burden of proof." *Behradrezaee v. Dashtara*, 910 A.2d 349, 364 (D.C.2006) (internal citations and quotation marks omitted). On appeal, we conduct an independent review of the record and apply the same substantive standard as the trial court. *Television Capital Corp. of Mobile v. Paxson Commc'ns Corp.*, 894 A.2d 461, 466 (D.C. 2006) (internal citations omitted). Even though this court looks at the evidence in the light most favorable to the non-moving party, "[m]ere conclusory allegations on the part of the non-moving party are insufficient to stave off the entry of summary judgment." *Musa v. Continental Ins. Co.*, 644 A.2d 999, 1002 (D.C.1994). The trial court does not make findings of fact when it grants summary judgment, rather its task is "to determine whether any material issues of fact exist." *District of Columbia v. W.T. Galliher & Brother*, 656 A.2d 296, 302 (D.C.1995) (internal citations omitted).

### 1. The Tenant Opportunity to Purchase Act

The District of Columbia Council passed TOPA with the aim of "discourag[ing] the displacement of tenants through conversion or sale of rental property" and "strengthen[ing] the bargaining position of

tenants toward that end without unduly interfering with the rights of property owners to the due process of law[.]" D.C.Code § 42–3401.02(1). TOPA provides that "[b]efore an owner of a housing accommodation may sell the accommodation ... the owner shall give the tenant an opportunity to purchase at a price and terms that represent a bona fide offer of sale." D.C.Code § 42–3404.02(a). The owner must provide each of the building's tenants and the Mayor of the District of Columbia with a written copy of an offer of sale. If the property has more than one unit, the offer of sale must be posted in a common area of the building. D.C.Code § 42–3404.03. Once the owner has provided the tenant with a written offer of sale, the tenant's rights with respect to purchasing the property are dictated by the number of units in the building. See D.C.Code §§ 42–3404.09, –3404.10, –3404.11. However, the owner "shall not require" that a tenant waive any right under TOPA "except in exchange for consideration which the tenant, in the tenant's sole discretion, finds acceptable." D.C.Code § 42–3404.07 (2001).

a. *The Status of the Property*

Linen argues that the trial court should not have granted summary judgment in favor of the landlord because a material fact remained in dispute, specifically whether the property is a single-family or two-unit dwelling. He contests the trial court's reliance on language in an August 2002, Department of Consumer and Regulatory Affairs decision and order stating that the property is a single-family dwelling on the ground that this portion of the decision is dicta. The order was entered in a DCRA proceeding initiated by Linen in which it was established that although the residence was in form a single-family home, it was being used as a two-unit

rental property without the required certificate of occupancy. He argues that the property's status as a single-family or two-unit accommodation was not sufficiently considered by the DCRA to have precedential value for the trial court. In its decision and order, the DCRA awarded Linen a rent refund in excess of $24,000.

Further, the tenant disputes the trial court's reliance in part on the landlord's filing in February 2002, of an amended registration form that describes the property as a single-family home. The tenant states that he filed his petition with the Rental Accommodations and Conversion Division of the DCRA in June of 2001, that the apartment became vacant in August of 2001, and that the landlord did not file the amended registration until February of 2002, after the DCRA hearing had taken place. The tenant suggests that this sequence of events indicates that the landlord did not intend to permanently remove the basement apartment from the rental market, but rather that the basement apartment was merely vacant, or temporarily removed from the rental market, or taken off the market in bad faith. We are not convinced that this sequence of events lends appellant's position any support at all.

Linen also argues that the property's location in the R–3 zoning district, an area where only single-family homes are permitted, does not support the trial court's conclusion that the property is a single-family home. He contends that the landlord illegally maintained a two-unit dwelling in violation of the applicable zoning regulations, and that the landlord's conduct in this respect dictates the status of the property for TOPA purposes. In addition, Linen argues that the language in the 2005 Superior Court order[2] describing the property as a single-family home did not

2. In 2005, Lanford filed a motion to compel

and guarantee access to the property. The

have any precedential value for the trial court because the property's status as a single-family or two-unit dwelling was not sufficiently considered by the Landlord and Tenant Branch in the 2005 proceeding.

■■■ To affirm the trial court's grant of summary judgment we must find, on the basis of our independent review of the record, that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Super. Ct. Civ. R. 56(c). The Supreme Court has explained that under FEDERAL RULE OF CIVIL PROCEDURE 56(c),[3] entry of summary judgment is proper when there is "no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). The substantive law applicable to an individual case determines when a fact is material, and only disputes over facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. When ruling on a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. Genuine factual issues for trial are those that "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505.

■■ In the case at bar, whether the property is a single-family or two-unit dwelling will affect the outcome of Linen's TOPA-based claim, and thus the status of the property is a material fact under *Anderson.* However, on the record before us, there is no genuine issue concerning this material fact. Any finding by a judge or a jury that Lanford had failed to establish that the property is a single-family dwelling would be insupportable. As the trial court correctly pointed out in its order granting summary judgment, Linen prevailed before the DCRA because the property is a single-family home that Lanford had illegally rented as a two-unit dwelling. The amended registration filed by Lanford in February 2002, following the DCRA proceeding identified the property as a single-family home, and DCRA records describe the property as "a two bedroom single family home." Moreover, the property is situated in district R–3 and the applicable zoning regulations prohibit two-family homes. Linen has not set forth any specific facts indicating that a genuine factual issue remains for trial. Instead, he has made conclusory allegations in opposition to Lanford's evidence that are insufficient to create a genuine factual issue requiring a trial. *See Beard v. Goodyear Tire & Rubber Co.,* 587 A.2d 195, 198 (D.C.1991) (explaining that "[c]onclusory allegations by the non-moving party are insufficient ... to defeat the entry of summary judgment[.]") (internal citations omitted). We conclude that the trial court was correct in ruling that the property is a single-family home.

Landlord and Tenant Branch of Superior Court granted the motion in an order dated July 12, 2005, and provided Lanford and his associates with "reasonable access to all portions of the single-family house."

3. "Because Super. Ct. Civ. R. 56 is identical to the federal rule, 'we may look to federal court decisions interpreting the federal rule as persuasive authority in interpreting [the local rule].'" *Hollins v. Federal Nat'l Mortgage Ass'n,* 760 A.2d 563, 577 n. 10 (D.C. 2000) (quoting *Goldkind v. Snider Bros., Inc.,* 467 A.2d 468, 472 (D.C.1983) (internal citation omitted)). Super. Ct. Civ. R. 56 is identical to its federal equivalent "except for the provision in paragraphs (a) and (b) of Rule 56 that the time period for filing a motion shall be set by Court order." Super. Ct. Civ. R. 56 cmt.

b. *The Applicable Settlement Period Under TOPA*

■■■ Linen's second argument challenging the order granting summary judgment is that the trial court erred in ruling that the landlord provided him with at least the minimum time period for settlement required by TOPA. Based on his contention that the property is a two-family home, the appellant asserts that under TOPA he was entitled to a minimum of ninety days to settle. However, as we agree with the trial court's conclusion that the property at issue is a single-family dwelling, we apply the TOPA provisions governing the sale of single-family homes to the facts of this case.

Lanford provided Linen with the offer of sale required by TOPA on August 25, 2005. The parties entered into a contract of sale for the property on October 3, 2005, and to avoid any dispute that his offer did not match the third-party contract, Linen "merely changed the name on the contract, initialed, and signed it." The copy of the regional sales contract signed by Linen that appears in the appellant's appendix is in large part illegible. However, a handwritten notation appearing on the third page of the signed regional sales contract indicates that settlement was to take place on or before December 1, 2005. It is unclear which party is responsible for the inclusion of this handwritten notation and Linen denies having signed or initialed the provision of the contract calling for settlement by December 1, 2005. Linen brought suit a day later on December 2, 2005, alleging that his rights under TOPA had been violated.

TOPA specifies that once a single-family home tenant provides the owner with a written statement of interest pursuant to D.C.Code § 42–3404.09(1), the owner must allow the tenant sixty days to negotiate a contract of sale. D.C.Code § 42–3404.09(2). Then, if the parties are able to negotiate a contract of sale, the owner "shall afford the tenant a reasonable period prior to settlement in order to secure financing and financial assistance, and shall not require less than 60 days after the date of contracting." D.C.Code § 42–3404.09(3). The owner shall grant the tenant an extension of time to proceed to settlement if "a lending institution or agency estimates in writing that a decision with respect to financing or financial assistance will be made within 90 days after the date of contracting[.]" *Id.* Any extension of time the owner provides the tenant is to be consistent with the written estimate by the financial institution. *Id.* TOPA protects owners from liability under a third party contract if they provide tenants with reasonable extensions of time to negotiate a contract or proceed to settlement. D.C.Code § 42–3404.04. The owner cannot compel a tenant to waive his rights under the statute unless consideration is provided and any decision on waiver is committed to the tenant's discretion alone. *See* D.C.Code § 42–3404.07.

■■■ The portions of TOPA cited above provide that Linen had a minimum of sixty days from October 3, 2005, to proceed to settlement. December 1, 2005, the settlement date identified in the signed regional sales contract, is sixty days from October 3, 2005, if one includes both the start and the end dates in the calculation.[4]

---

4. Although Linen argues on appeal that December 1, 2005, is less than sixty days from October 3, 2005, he did not make this argument before the trial court. Generally speaking, "matters not properly presented to a trial court will not be resolved on appeal."

*Williams v. Gerstenfeld,* 514 A.2d 1172, 1177 (D.C.1986). "A court deviates from this principle only in exceptional situations and when necessary to prevent a clear miscarriage of justice apparent from the record." *Id.* As such circumstances are not present here, we

In addition, nothing in the record indicates that the landlord did anything further to schedule or insist upon a settlement date of December 1, 2005, or a specific later date. Nor does the record indicate that prior to filing his complaint Linen requested that Lanford grant him an extension of time to proceed to settlement. Instead, he immediately filed suit and he claims in his appellate brief that "it was certain that the landlord never intended to allow the tenant the proper time to secure financing and financial assistance." As Linen was afforded the minimum sixty-day time period to proceed to settlement that TOPA requires when an owner sells a single-family home, we affirm the trial court's grant of summary judgment.

## B. *Post–Judgment Relief*

As well as challenging the trial court's grant of summary judgment in Lanford's favor, Linen argues that the trial court erred by granting Lanford's motion for post-judgment relief and ruling that he was entitled to: (1) retain Linen's deposit; and (2) recover attorneys' fees associated with defending the suit and securing the grant of summary judgment in his favor. We analyze each component of the post-judgment relief individually.

### 1. *Forfeiture of the Deposit*

 Linen challenges the order requiring that his deposit be forfeited to Lanford on the ground that the trial judge failed to make the finding of bad faith that he argues is required by TOPA. This challenge has merit.

When a tenant seeks to take advantage of his right to purchase a rental accommodation from the owner, the owner cannot require him to pay a deposit in excess of five percent of the contract sale price to enter into a contract. D.C.Code § 42–3404.05(b). This subsection further pro-

vides that "[t]he deposit is refundable in the event of a good faith failure of the tenant to perform under the contract." *Id.* For a tenant, just as for an owner, "intentional failure ... to comply with the provisions of this subchapter" is "prima facie evidence of bargaining without good faith." D.C.Code § 42–3404.05(a)(3). In contrast to these provisions, the contract the parties entered affords the landlord a far more favorable position regarding forfeiture. Paragraph 25 of the regional sales contract states that "[i]f the Purchaser fails to complete Settlement, at the option of the Seller, the Deposit may be forfeited as liquidated damages and not as a penalty, in which event the Purchaser will be relieved from further liability to the Seller." Thus, under the regional sales contract, the landlord can elect to retain the deposit if the tenant fails to perform, even if there is no finding that the tenant has not bargained in good faith.

The trial court, in its order granting post-judgment relief, ruled that the "deposit should be forfeit to Defendant as a matter of law." However, it is unclear whether the court based its ruling on application of TOPA or of the regional sales contract. Lanford, in his memorandum in support of post-judgment relief, argued that Linen should forfeit the deposit pursuant to Paragraph 25 of the regional sales contract. The landlord made the same contract-based argument in a supplement to his motion for post-judgment relief. In contrast, the tenant, in his opposition to the landlord's motion for post-judgment relief, contended that TOPA supersedes the provisions of the regional sales contract and that the court was required to make a finding of bad faith on the tenant's part before it could order the deposit forfeited. Linen reiterated this TOPA-based argument in his opposition to the supple-

need not consider this argument that Linen raises for the first time on appeal.

ment filed by Lanford. It is not clear whether the trial court considered TOPA in granting the landlord's motion for post-judgment relief. In any event, the court did not make the required explicit finding of bad faith.

As noted above, a tenant must receive consideration from the owner that the tenant alone finds acceptable for there to be a waiver of a right conferred on him by TOPA. D.C.Code § 42–3404.07. Under TOPA, an owner cannot require a tenant to pay a deposit greater than five percent of the contract sales price, and the deposit is refundable when there is "a good faith failure of the tenant to perform under the contract." D.C.Code § 42–3404.05(b). There is nothing in the record to indicate that Linen received consideration to waive the rights provided for by § 42–3404.05 and Lanford does not make this argument on appeal. Thus, under TOPA, Lanford was entitled to retain the deposit only if Linen failed to perform in good faith under the contract. We reverse the trial court's order requiring that Linen forfeit the deposit and remand for the trial court to consider, in accordance with D.C.Code § 42–3404.05(b), whether Linen failed to perform in good faith under the contract.

### 2. Award of Attorneys' Fees [5]

■■■ The landlord's post-judgment motion also requested that the court award him attorneys' fees, and it granted him this relief. On appeal, Linen contends that TOPA, and not Paragraph 23 of the regional sales contract,[6] controls an award of attorneys' fees and that Lanford is not entitled to attorneys' fees under D.C.Code

§ 42–3405.03 and our decisions interpreting the statute. However, as the trial court's award of attorneys' fees is not final, we need not reach the merits of Linen's argument.

This court has previously explained that "[a]n award of attorney's fees is final when the trial court has 'determined the quantum of attorney's fees to be paid,' not when the trial court 'merely establishe[s] entitlement to attorney's fees in an amount to be later determined.'" *Marlyn Condo., Inc. v. McDowell,* 576 A.2d 1346, 1347 n. 1 (D.C.1990) (quoting *Trilon Plaza Co. v. Allstate Leasing Corp.,* 399 A.2d 34, 37 (D.C.1979)). In this case, although the trial court ruled that Lanford is entitled to recover attorneys' fees from Linen, it did not determine the amount that Lanford can recoup. Consequently, the award of attorneys' fees is not a final order. With certain exceptions not applicable to the case at bar, this court has jurisdiction over appeals from "all final orders and judgments of the Superior Court[,]" D.C.Code § 11–721(a)(1), and certain specified interlocutory appeals from Superior Court, D.C.Code § 11–721(a)(2). This court has "no jurisdiction to entertain an appeal from a non-final order[.]" *Burtoff v. Burtoff,* 390 A.2d 989, 991 (D.C.1978) (internal citations omitted). As a result, Linen's appeal from the trial court's award of attorneys' fees must be dismissed.

### III.

The order granting summary judgment is affirmed, while the order compelling the tenant to forfeit the deposit is reversed

---

**5.** On December 21, 2005, the trial court issued an order compelling the tenant to pay the landlord $1200 in attorneys' fees as a sanction for the tenant's failure to comply with a court order requiring him to release the deposit to the landlord. The tenant did not challenge this award of attorneys' fees in the instant appeal.

**6.** Paragraph 23 provides in relevant part: "[i]n any action or proceeding involving a dispute between the Purchaser and the Seller arising out of this Contract, the prevailing party will be entitled to receive from the other party reasonable attorney's fees[.]"

and the case is remanded for further proceedings consistent with this opinion. The appeal challenging the award of attorneys' fees is dismissed as it is not properly before this court.

*So ordered.*