*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-PR-1177

IN RE PEARL ROBINSON;
BRUCE E. GARDNER, APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(INT-358-14)

(Hon. Richard A. Levie, Trial Judge)

(Submitted March 22, 2019                    Decided September 20, 2019[*])

*Bruce E. Gardner*, pro se.

*Michael Holland*, pro se.

Before FISHER, BECKWITH, and MCLEESE, *Associate Judges*.

PER CURIAM:  Appellant Bruce Gardner challenges the trial court's order partially denying his request for compensation for guardianship services he provided to Pearl Robinson.  We vacate the trial court's order and remand the case for further proceedings.

---

[*]  The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment.  It is now being published by direction of the court.

**I.**

The following facts appear to be undisputed. In November 2014, Mr. Gardner was appointed as both general guardian and general conservator for Ms. Robinson. In January of 2016, Mr. Gardner filed a petition seeking compensation for guardianship services rendered to Ms. Robinson from November 2014 to November 2015. Mr. Gardner sought $78,330 in compensation for 261.1 hours of work billed at $300 an hour. The petition was approved.

In December 2016, Mr. Gardner filed a petition seeking compensation for guardianship services rendered to Ms. Robinson from November 2015 to November 2016. The petition requested $60,765 in compensation for 202 hours of work billed at $300 an hour and 6.6 hours of work at $25 an hour. In February 2017, the petition was denied without prejudice on the ground that Mr. Gardner had failed to adequately explain why he had billed some shopping trips at $25 an hour and others at $300 an hour. Shortly thereafter, Mr. Gardner filed the amended petition at issue, seeking $56,832.50 in compensation for 187.7 hours of work at $300 an hour and 20.9 hours of work at $25 an hour.

In June 2017, the trial court partially granted Mr. Gardner's amended petition, approving compensation in the amount of $20,703.50. The trial court determined that many of the services that Mr. Gardner provided to Ms. Robinson -- including taking Ms. Robinson to medical appointments and addressing household-maintenance issues -- did not require special expertise that justified compensation at a $300 hourly rate. The trial court therefore approved payment at $300 an hour for legal services but determined that non-legal services -- which could have been delegated to lower-cost caregivers -- would be compensated at $90 an hour.

Mr. Gardner moved for reconsideration of the trial court's decision. In September 2017, the trial court issued an amended order increasing the compensation awarded to Mr. Gardner by $1,239.50 to $21,943. The trial court emphasized that it was not criticizing the diligence of Mr. Gardner's care for Ms. Robinson but nonetheless affirmed its earlier holding that it was unreasonable to pay Mr. Gardner $300 an hour for non-legal services.

## II.

The compensation of court-appointed guardians is governed by D.C. Code § 21-2060(a) (2019 Supp.), which is implemented by Super. Ct. Prob. R. 308. *In re*

*Brown*, 211 A.3d 165, 167 (D.C. 2019). A guardian seeking compensation must file a petition setting forth "the character and summary of the service rendered in reasonable detail." *Id.* (citing Super. Ct. Prob. R. 308(a), (b)(1)) (internal quotation marks omitted). The trial court must then determine whether the compensation request is reasonable. *Id.* We review the denial of a compensation request for abuse of discretion and review the underlying legal principles de novo. *Id.*

We agree with much of the trial court's reasoning in this case, but we ultimately conclude the trial court did not adequately explain certain critical aspects of its decision. We therefore vacate the trial court's order and remand for further proceedings.

Mr. Gardner attacks the trial court's ruling on multiple fronts. First, he argues the trial court did not give adequate weight to the wishes of Ms. Robinson and her family that Mr. Gardner be compensated at a rate of $300 an hour. The trial court correctly noted, however, that consent from other interested parties did not relieve the court of its responsibility to determine whether Mr. Gardner's requested fees were reasonable. *See* Super. Ct. Prob. R. 308(g) (consent constitutes waiver of right to object to petition but trial court must still review petition). For the first time on appeal, Mr. Gardner argues that he had an enforceable contract with Ms. Robinson

and her nephew, Mr. Michael Holland, that Mr. Gardner would be paid at $300 an hour. Absent exceptional circumstances, our review is limited to those arguments raised before the trial court. *Linen v. Lanford*, 945 A.2d 1173, 1180 n.4 (D.C. 2008). We see no exceptional circumstances here. Even were we to consider the claimed agreement, it is far from clear that either Ms. Robinson -- who was deemed incapacitated by the court **--** or her nephew was capable of entering into a legally binding contract with Mr. Gardner on Ms. Robinson's behalf.

Second, Mr. Gardner asserts that the trial court erred in failing to apply the law-of-the-case doctrine in determining whether the requested $300 hourly rate was reasonable. We disagree. As the trial court noted, the law-of-the-case doctrine is discretionary. *Nunnally v. Graham*, 56 A.3d 130, 142 (D.C. 2012). We hold that the trial court was not required to find that Mr. Gardner's requested rate in the current compensation request was reasonable simply because that rate had been approved, without analysis, in an earlier compensation request decided by a different judge and relating to a different time period. To the extent that Mr. Gardner now relies on the doctrines of issue and claim preclusion, he did not rely on those doctrines in the trial court and we see no basis for considering them for the first time on appeal. *Linen*, 945 A.2d at 1180 n.4.

Third, Mr. Gardner contends that the trial court abused its discretion by "micromanaging" his decisions regarding the care of Ms. Robinson. We conclude to the contrary. In support of this argument, Mr. Gardner cites only *In re Orshansky*, 804 A.2d 1077 (D.C. 2002). That case, however, does not support the proposition that decisions by a guardian relating to compensation cannot be "second-guessed" by the trial court and found to be unreasonable. Indeed, the trial court is explicitly tasked with determining the reasonableness of compensation requests. *In re Brown*, 211 A.3d at 167 (citing Super. Ct. Prob. R. 308(a), (b)(1)). It would make little sense to require that petitions for compensation contain the level of detail prescribed in Super. Ct. Prob. R. 308 -- including, "(A) the character and summary of the service rendered; (B) the amount of time spent; [and] (C) the basis of any hourly rate(s) of compensation" -- if the details could not be carefully scrutinized by the trial court.

Fourth, Mr. Gardner argues that it was impermissible for the trial court, in determining the reasonableness of his compensation request, to consider (1) how granting the request in full would diminish the assets of Ms. Robinson's estate and (2) Mr. Gardner's obligation to conserve those assets. We again disagree. Mr. Gardner identifies no authority barring a trial court from considering how awarding the full amount of a compensation request would affect the ward's assets. We see no abuse of discretion in the trial court's decision to consider that factor here.

Moreover, regardless of the scope of Mr. Gardner's statutory duty as a guardian to conserve Ms. Robinson's assets under D.C. Code § 21-2047(a)(4) (2012 Repl.) -- and setting aside whatever related duties arose from his dual role as Ms. Robinson's conservator -- Mr. Gardner was undeniably Ms. Robinson's fiduciary. As a fiduciary "under the supervision of the Court," Mr. Gardner was obligated to handle Ms. Robinson's assets "with the care, skill, prudence, and diligence" of "a prudent person," taking into consideration "the anticipated needs of . . . the ward or the [] estate." Super. Ct. Prob. R. 5(a)(1), (5). Accordingly, the trial court did not abuse its discretion in considering whether Mr. Gardner's billing of certain services at $300 an hour was inconsistent with Mr. Gardner's responsibility to see that Ms. Robinson's money was spent prudently.

Fifth, Mr. Gardner challenges the trial court's conclusion that Mr. Gardner should be compensated at his usual $300 rate only for legal, as opposed to non-legal, services. We conclude that remand is required on this issue. As Mr. Gardner notes, and as the trial court acknowledged, none of the general guardianship duties enumerated in D.C. Code § 21-2047(a) are inherently legal. A number of the general guardianship duties are aimed at ensuring that the guardian has enough regular contact with the ward that the guardian has an up-to-date understanding of the ward's physical and mental health and is well positioned to make decisions on the ward's

behalf and to include the ward in the decision-making process to the greatest extent possible. D.C. Code § 21-2047(a). Core aspects of a guardian's services are thus interpersonal in nature and do not appear to be traditional legal services. That may well mean that core guardianship services should not be compensated at legal rates. Mr. Gardner, however, maintains that his requested $300 hourly rate is for "non-legal fiduciary services" and that the prevailing market rate for legal services for an attorney of his experience would be over $800 an hour.

Relatedly, Mr. Gardner argues that the trial court inadequately explained the decision to select $90 an hour as the appropriate rate for services that the trial court deemed to be non-legal. On this point too we agree with Mr. Gardner. After a detailed analysis of Mr. Gardner's billing entries, the trial court identified various "housekeeping" and "companionship" services that it found did not require any particular legal or professional skill and therefore were not reasonably compensated at a $300 hourly rate. In explaining the reduction of Mr. Gardner's hourly rate for these services to $90, however, the trial court noted only that (1) the lower hourly rate "more appropriately reflect[ed] the value of [Mr. Gardner's] services," "taking into account [Mr. Gardner's] failure to delegate such tasks at a lower hourly rate"; and (2) $90 an hour was the hourly rate paid to guardians from public funds when a

ward's estate lacks adequate funds to pay guardians for their services, D.C. Code § 21-2060. We conclude that further explanation is required on this point.

It may be that the trial court has the authority to reduce Mr. Gardner's $300 hourly rate, either because that rate is generally unreasonable for non-legal guardianship services or because some of the services Mr. Gardner provided should reasonably have been provided by others at a reduced cost. But the trial court has not yet adequately explained (a) why $300 is not a reasonable hourly rate for at least some non-legal guardianship services and (b) why $90 is a reasonable hourly rate. In particular, the fact that $90 is the hourly rate paid to guardians when an estate's assets are depleted does not mean that rate should be viewed as the reasonable rate for all non-legal guardianship services. We therefore remand for further consideration of Mr. Gardner's compensation request. *Cf., e.g.*, *In re Estate of McDaniel*, 953 A.2d 1021, 1024-25 (D.C. 2008) (where trial court reduced petitioner's requested $250 hourly rate to $200 without explanation, case was remanded to trial court to explain what factors trial court relied upon in determining reasonable hourly rates).

For the foregoing reasons, we vacate the trial court's order and remand for further proceedings.

*So ordered.*